IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL HOLLINS,**

      Petitioner,

v.                                             CIVIL ACTION NO. 2:09cv33

**WARDEN JAMES CROSS,**

      Respondent.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On April 7, 2009, the *pro se* petitioner, Michael Hollins, an inmate at USP Hazelton, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241.[1] The petitioner paid the required filing fee on May 11, 2009 On May 12, 2009, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On July 13, 2009, the respondent filed his response by filing a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. On July 14, 2009,

---

[1] The petition, in fact, is entitled: Petition for Writ of *Corum Nobis*, or in the Alternative, a Wit of Habeas Corpus. While Rule 60(b) of the Federal Rules of Civil Procedure expressly abolished several common law writs in civil proceedings, including *corum nobis* and *audita querela*, the Supreme Court nonetheless recognized and upheld the continued availability of the writ of *error coram nobis* in criminal cases as a remedy for the most fundamental of errors, where no other remedy is available, and where valid reasons exist for the petitioner's failure to seek relief earlier. See United States v. Morgan, 246 U.S. 502, 512-513 (1954). To the extent that *corum nobis* might otherwise be available to this petitioner, it is clear that no fundamental error exists in the petitioner's criminal case that would warrant such relief. Furthermore, as noted elsewhere in this Report and Recommendation, the petitioner has an identical petition pending before the sentencing court.

1

a Roseboro Notice was issued. To date, the petitioner has failed to file a reply.

## II. FACTS

On March 13, 1992, the petitioner was charged in a one count Indictment with violation of 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm. On June 30, 1992, following a jury trial, the defendant was found guilty. (Doc. 36-1. P. 44) On April 13, 1993, the petitioner was sentenced in the United States District Court for the Northern District of California, to a term of 180 months imprisonment to be followed by a five year term of supervised release. (Doc. 36-1, pp. 7-9). The petitioner satisfied the original sentence and was released from imprisonment on September 16, 2005. (Doc. 36-1, p. 29). Between November 3, 2005, and December 6, 2006, the petitioner engaged in five acts of conduct which violated the term of his supervised release. (Doc. 36-1, p. 37). On November 27, 2007, the United States District Court for the Northern District of California found that the petitioner had violated the terms of his supervised release and sentenced him to a term of 37 months imprisonment to be followed by 23 months of supervised release. (Doc. 36-1, pp. 38-39). The petitioner returned to BOP custody to begin his new term of imprisonment on December 11, 2007, and his sentence was computed, applying all the jail credit he was entitled to, coupled with the sentence length and projected Good Conduct Time. Based on those calculations, the petitioner has a current projected release date of April 4, 2010. (Doc. 36-1, p. 28).

## III. CONTENTIONS OF THE PARTIES

The petitioner asserts that his sentence has been improperly calculated. Specifically, he argues that his original offense was a Class C felony and therefore, 24 months is the maximum term to which he could be sentenced upon revocation of his supervised released. Although acknowledging that his original sentence was enhanced by 18 U.S.C. § 924(c), he argues that the sentencing court imposed "a sentence outside his actual statutory offense category and guideline

2

range." (Doc. 1, p. 3). As proof, the petitioner points to the BOP Sentencing Monitoring Computation Sheet for February 28, 2008, which reflects his class of offense as a Class C felony and argues that his offense was in fact a Class C felony pursuant to 18 U.S.C. § 3559(a)(3). Id. The petitioner alleges that "the change of defendant's offense class happened after his sentencing outside of the court. The Bureau of Prisons has defendant's central file illustrating that defendant was sentenced in 1993 as a Class A felony offense classification which is not only an error but untrue." (Doc. 1, p. 6). Although the petitioner does not indicate the specific relief that he requests, it would appear that he wants the BOP to be ordered to correct his records and recalculate his sentence.

The respondent argues that:

(1) the petitioner has failed to exhaust his administrative remedies:

(2) this court lacks jurisdiction over he petitioners claims because they should have been brought before the sentencing court; and

(3) the petition should be denied as a successive petition and abuse of the writ.[2]

### IV. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan

---

[2]The undersigned finds that this argument is without merit because the petitioner has not previously filed either a section 2255 or 2241 petition and received a decision on the merits. Although the petitioner has been persistent in his efforts to convince the sentencing court that his underlying conviction is a Class C felony, rather than a Class A, he has yet to receive a ruling on a nearly identical Motion for Writ of Coram Nobis or in the alternative, Writ of Habeas Corpus that he filed with the United States District Court for the Northern District of California on February 23, 2009. See 3:92-cr-00126-SBA-1. Therefore, the instant matter cannot be considered a successive petition nor an abuse of the writ.

Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

### A. Exhaustion of Administrative Remedies

In the response to the petition, the respondent argues that under the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The respondent then cites several cases in which the Supreme Court has held that under the PLRA, Congress has mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. See Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 531 U.S. 956 (2001). In addition, the respondent notes that courts have applied these same principles to petitions for writ of habeas corpus. See Pelissero v,. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994); Wright v. Anderson, 2008 WL 583442 (S.D. W.Va. February 29, 2008).

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, the respondent's argument misses the mark. The requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[3]

---

[3] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneously with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas

6

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue. at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

Here, it is not disputed that petitioner failed to exhaust his administrative remedies prior to filing suit in this court.[4] However, this case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**B. Lack of Jurisdiction**

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under section 2255 in the district court of conviction. A petition for writ of habeas corpus, pursuant to section 2241, on the other hand, is intended to address the **execution** of a

---

actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

[4]In fact, the plaintiff filed a Motion to Waive Exhaustion of Administrative Remedies. Although he alleges that the BOP has failed to respond to his grievances in a timely manner, he offers no proof. However, the issue is moot for the reasons discussed in this Report and Recommendation.

sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. While the terms of section 2255 expressly prohibit prisoners from challenging their convictions and sentences through a habeas corpus petition under section 2241, there is nonetheless a "savings clause" in section 2255, which allows a prisoner to challenge the validity of his conviction under section 2241 **if** he can demonstrate that section 2255 is "inadequate or ineffective to test the legality of his detention." Title 28 U.S.C. § 2255. A petitioner bears the burden of demonstrating that the section 2255 remedy is "inadequate or ineffective," and the standard is an extremely stringent one. In the Fourth Circuit, section 2255 is deemed to be "inadequate and ineffective" to test the legality of a conviction **only** when all three of the following conditions are satisfied:

> (1) at the time of the conviction, the settled law of this Circuit or of the Supreme Court established the legality of the conviction;
>
> (2) subsequent to the prisoner's direct appeal and first section 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal, **and**
>
> (3) the prisoner cannot satisfy the gate-keeping provisions of section 2255 because the new rule is not one of constitutional law.

See In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000) (emphasis added).

In this case, the petitioner is not challenging the execution of his sentence, but instead is challenging the imposition of his sentence. In particular, he is alleging that he was sentenced outside his actual statutory offense category and guideline range. (Doc. 1, p.3). Although the petitioner has not raised the savings clause, it is clear that he is not entitled to its application. In the instant case, even if the petitioner satisfied the first and the third elements of Jones, violation of 18 U.S.C. § 922(g)(1) remains a criminal offense, and therefore the petitioner cannot satisfy the second element of Jones. Consequently, the petitioner has not demonstrated that §2255 is an inadequate or ineffective remedy, and he has improperly filed a §2241 petition.

Furthermore, to the extent that the petitioner is alleging that the BOP changed his sentence classification from a Class C felony to a Class A felony after his sentencing and outside the purview of the court, the same is clearly without merit. The Judgment in the defendant's underlying criminal case indeed does indicate that he was found guilty of a Class C felony. (Doc. 1, p.2). However, that is obviously a typographical error. In its Statement of Reasons, the sentencing court clearly stated that the [petitioner] had been charged with violation of 18 U.S.C. § 922(g)(1) – felon in Possession of a Firearm, a Class A felony. (Doc. 36-1). Furthermore, on appeal of his sentence following revocation of his supervised release, the petitioner contended that the district court erred by sentencing him to a term greater than 24 months because his underlying conviction for felon in possession of a firearm is a Class C felony. In affirming the 37-month sentence for violation of his supervised parole, the United States Court of Appeals for the Ninth Circuit found that pursuant to 18 U.S.C. § 924(e), the petitioner's underlying offense was punishable by life imprisonment and was, therefore, a Class A felony. (Doc. 36-1, p.51). Accordingly, the petitioner's claims with respect to the BOP are without merit, and there is no support for any claim he may be presenting that the BOP has miscalculated his sentence and confined him past his release date.

Finally, the undersigned notes that the petitioner alleges that the BOP, the Consolidated Designation and Sentence Computation Center, and various individual named within the petition have violated the Privacy Act, 5 U.S.C. § 552a by failing to maintain accurate records and by failing to correct inaccurate files. In addition, the petitioner alleges that the BOP has used inaccurate records in making adverse decisions regarding his custody and security classifications, job and quarters assignments, and general activities within the institution. As noted in the discussion above, it is clear that the BOP records are accurate to the extent that the petitioner was convicted of a Class A felony. Moreover, to the extent that the petitioner complains about the conditions of his

confinement, these are not claims which can be brought in a habeas corpus petition. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (federal habeas relief extends to prisoners challenging the fact or duration of imprisonment and § 1983 actions apply to inmates making constitutional challenges to conditions of confinement). See also Lee v. Winston, 717 F.2d 888 (4th Cir. 1983). To pursue those claims, the petitioner must file a lawsuit governed by Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971),[5] and pay the $350.00 filing fee.

## VI. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 35) be **GRANTED**, the petitioner's Motion to Waive Exhaustion of Administrative Remedies (Doc.. 13)be **DENIED** as **MOOT**, and the petitioner's §2241 petition be **DENIED and DISMISSED.**

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the

---

[5]In Bivens, the Supreme Court created a counterpart to §1983 so that individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. Because petitioner is a federal prisoner, he must therefore file a Bivens action as opposed to one under §1983.

*pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: 9-14-09

*[signature]*
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE